**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |
|---|---|
| **JOHN THOMAS MOORE ROLLOVER IRA, Individually and On Behalf of All Others Similarly Situated,**<br><br>　　**Plaintiff,**<br><br>**v.**<br><br>**SOLARWINDS, INC., THOMA BRAVO, SILVER LAKE PARTNERS, PROJECT AURORA HOLDINGS, LLC, PROJECT AURORA MERGER CORP., KEVIN B. THOMPSON, STEVEN M. CAKEBREAD, PAUL J. CORMIER, ELLEN F. SIMINOFF, ROGER J. SIPPL and LLOYD G. WATERHOUSE,**<br><br>　　**Defendants.** | **No. 15-CV-1228-SS** |

---

**SOLARWINDS, INC., KEVIN B. THOMPSON, STEVEN M. CAKEBREAD,
PAUL J. CORMIER, ELLEN F. SIMINOFF, ROGER J. SIPPL AND
LLOYD G. WATERHOUSE'S MOTION TO DISMISS
AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND
VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

---

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.    FACTUAL BACKGROUND ........................................................................................ 2

III.   THE AMENDED COMPLAINT SHOULD BE DISMISSED ....................................... 4

       A.     Plaintiff Fails to Allege a Viable Claim for Breach of Fiduciary Duty ............... 5

              1.     Plaintiff Fails to Allege a Breach of the Duty of Loyalty ......................... 5

              2.     Plaintiff Fails to Allege the Directors Acted in Bad Faith ....................... 8

              3.     Plaintiff Alleges No Facts to Overcome the Business Judgment
                     Rule ........................................................................................................ 11

       B.     Plaintiff Fails to Allege Aiding and Abetting Breach of Fiduciary Duty ........... 13

       C.     Plaintiff Fails to Allege a § 14(a) Claim ......................................................... 14

IV.    CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

Cᴀsᴇs

*Agostino v. Hicks,*
    845 A.2d 1110 (Del. Ch. 2004)............................................................14

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..........................................................................4

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)......................................................................4, 14

*Dent v. Ramtron Int'l Corp.,*
    No. 7950-VCP, 2014 WL 2931180 (Del. Ch. Jun. 30, 2014)........................ passim

*Globis Partners, L.P. v. Plumtree Software, Inc.,*
    No. 1577-VCP, 2007 WL 4292024 (Del. Ch. Nov. 30, 2007) ...............................7

*Hohenstein v. Behringer Harvard REIT I, Inc.,*
    No. 12-CV-3772, 2014 WL 1265949 (N.D. Tex. Mar. 27, 2014).........................15

*Hollis v. Hill,*
    232 F.3d 460 (5th Cir. 2000) ...............................................................5

*Hulliung v. Bolen,*
    548 F. Supp. 2d 336 (N.D. Tex. 2008) .....................................................15

*In re Alloy, Inc.,*
    No. 5626-VCP, 2011 WL 4863716 (Del. Ch. Oct. 13, 2011) .............................7, 9

*In re BioClinica, Inc. S'holder Litig.,*
    No. 8272-VCG, 2013 WL 5631233 (Del. Ch. Oct. 16, 2013)............................7, 8

*In re Browning-Ferris Indus., Inc. S'holder Derivative Litig.,*
    830 F. Supp. 361 (S.D. Tex. 1993), *aff'd sub nom. Cohen v. Ruckelshaus,* 20 F.3d 465
    (5th Cir. 1994)...............................................................................14

*In re Capstead Mortg. Corp. Sec. Litig.,*
    258 F. Supp. 2d 533 (N.D. Tex. 2003) .....................................................15

*In re KKR Fin. Holdings LLC S'holder Litig.,*
    101 A.3d 980, 1001 (Del. Ch. 2014)........................................................12

*In re Lear Corp. S'holder Litig.,*
    967 A.2d 640 (Del. Ch. 2008)...............................................................8

*In re Lukens Inc. Sec. Litig.*,
    757 A.2d 720 (Del. Ch. 1999) .................................................................5

*In re OPENLANE, Inc. S'holder Litig.*,
    No. 6849-VCN, 2011 WL 4599662 (Del. Ch. Sept. 30, 2011) ...............7

*In re Orchard Enters., Inc. S'holder Litig.*,
    88 A.3d 1 (Del. Ch. 2014).....................................................................13

*In re Plains Exploration & Prod. Co. S'holder Litig.*,
    No. 8090-VCN, 2013 WL 1909124 (Del. Ch. May 9, 2013) .................11

*In re Santa Fe Pac. Corp. S'holder Litig.*,
    669 A.2d 59 (Del. 1995) .......................................................................12

*In re Smurfit-Stone Container Corp. S'holder Litig.*,
    No. 6164-VCP, 2011 WL 2028076 (Del. Ch. May 20, 2011)............8, 9

*In re Think3, Inc.*,
    529 B.R. 147 (Bankr. W.D. Tex. 2015)..................................................5

*In re Transkaryotic Therapies, Inc.*,
    954 A.2d 346 (Del. Ch. 2008)...................................................6, 9, 13, 14

*In re Wheelabrator Techs., Inc. S'holder Litig.*,
    663 A.2d 1194 (Del. Ch. 1995)............................................................12

*Joe W. & Dorothy Dorsett Brown Found. v. Frazier Healthcare V, L.P.*,
    889 F. Supp. 2d 893 (W.D. Tex. 2012), *aff'd*, 538 Fed. Appx. 484 (5th Cir. 2013) ..............14

*Lovelace v. Software Spectrum Inc.*,
    78 F.3d 1015 (5th Cir. 1996) ..................................................................1

*Lyondell Chem. Co. v. Ryan*,
    970 A.2d 235 (Del. 2009) .....................................................................5, 8

*Marciano v. Nakash*,
    535 A.2d 400 (Del. 1987) .....................................................................12

*Masters v. Avanir Pharma., Inc.*,
    996 F. Supp. 2d 872 (C.D. Cal. 2014) .................................................14

*McMillan v. Intercargo Corp.*,
    768 A.2d 492 (Del. Ch. 2000)..............................................................5, 9

*Pilepro, LLC v. Chang*,
    --- F. Supp. 3d ---, 2016 WL 270874 (W.D. Tex. Jan. 20, 2016) ..........5

*Rosenblatt v. Getty Oil Co.*,
  493 A.2d 929 (Del. 1985) .................................................................................14

*Singh v. Attenborough*,
  No. 645, 2015, 2016 WL 2765312 (Del. May 6, 2016).........................................13

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
  365 F.3d 353 (5th Cir. 2004) ............................................................................15

*Tuchman v. DSC Commc'ns Corp.*,
  14 F.3d 1061 (5th Cir. 1994) ...........................................................................4, 6

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

This case involves a completed merger of SolarWinds, Inc. ("SolarWinds" or the "Company"), which was overwhelmingly approved by the Company's shareholders.  The approval was not surprising as the merger paid shareholders an unaffected premium of 43.5%.  Plaintiff filed this case before the shareholder vote on the deal, claiming the Proxy Statement[1] was false and required correction, and sought to enjoin the vote.  However, Plaintiff never moved for an injunction.

After the deal closed, Plaintiff filed the Amended Complaint for Breach of Fiduciary Duties and Violations of the Federal Securities Laws ("Amended Complaint"), alleging claims against:  the individuals who served on the Company's board of directors before the closing, Kevin B. Thompson, Steven M. Cakebread, Paul J. Cormier, Ellen F. Siminoff, Roger J. Sippl and Lloyd G. Waterhouse (collectively, the "Directors"), for breaches of fiduciary duty (Count I); SolarWinds for aiding and abetting supposed breaches of fiduciary duty (Count II); the Directors and SolarWinds for alleged violations of § 14(a) of the Securities Exchange Act of 1934 ("Exchange Act") (Count III); and the Directors for an alleged secondary liability claim under § 20(a) of the Exchange Act (Count IV).  SolarWinds and the Directors move to dismiss the Amended Complaint.

Count I fails to state a valid claim for breach of fiduciary duty because, pursuant to the exculpatory provisions of SolarWinds' certificate of incorporation and governing law, the Directors can only be held liable for money damages for a breach of the duty of loyalty or bad faith conduct, and the Amended Complaint alleges neither.  Count I further is fatally deficient

---

[1] A true and correct copy of the Proxy Statement is attached to this Motion to Dismiss as **Exhibit A**, and may be considered by the Court for purposes of this Motion.  *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996) (holding that, when deciding motion to dismiss claim for violations of securities laws, court may consider contents of relevant public disclosure documents which: (1) are required to be filed with SEC; and (2) are actually filed with SEC).

and should be dismissed because Plaintiff failed to allege facts to overcome the business judgment rule's presumption that the Directors acted properly in approving the merger.

Count II fails to state a claim against SolarWinds for aiding and abetting breaches of fiduciary duty because a corporation cannot aid and abet violations by the fiduciaries who serve it; and, even if that were not the case, Plaintiff's claim consists of boilerplate, conclusory allegations, which are not sufficient to allege a valid claim for aiding and abetting breaches of fiduciary duty.

Count III fails to allege a violation of § 14(a) of the Exchange Act.  Plaintiff claims the Directors and SolarWinds issued a false proxy statement, violating the statute; however, Plaintiff fails to allege facts showing that any of the alleged omissions from the Proxy Statement were material and fails to allege specific facts showing that the Directors or SolarWinds acted with the requisite state of mind.  Because Plaintiff failed to allege a primary violation of § 14(a), Plaintiff's secondary liability claim (Count IV) also fails and must be dismissed.

For these reasons, and as detailed below, SolarWinds and the Directors respectfully request that their Motion to Dismiss be granted.

## II.  FACTUAL BACKGROUND

SolarWinds is an Austin-based corporation organized under the laws of Delaware. SolarWinds designs, develops, markets, sells, and supports enterprise class information technology (IT) infrastructure management software for IT and DevOps professionals to manage on premise, hybrid cloud, and public cloud environments.  Ex. A at 11.

On August 6, 2015, Kevin Thompson ("Mr. Thompson"), SolarWinds' President and Chief Executive Officer, met with a representative of Thoma Bravo, an active investor in the software industry, at Thoma Bravo's request, to discuss the Company.   Thoma Bravo's

representatives subsequently telephoned Mr. Thompson on August 17, 2015 to inform him that Thoma Bravo was interested in submitting an offer to buy the Company.  On the same day, Thoma Bravo delivered an unsolicited letter of intent to acquire all outstanding stock of the Company at a price of $52.00 per share in cash, which price represented a 23.9% premium to the closing price of the Company's stock as of August 14, 2015.  *Id*. at 30.

What followed was an intense two-month process whereby the Directors, assisted by SolarWinds' financial advisor J.P. Morgan and counsel, evaluated the Company's various strategic alternatives.  *Id*. at 30-38.  Near the end of this process, on the morning of October 9, 2015, a representative of Reuters contacted the Company and indicated Reuters' intent to report that the Company was engaged in discussions with private equity firms regarding a possible sale.  *Id*. at 35.  Thus, on October 9, 2015, SolarWinds announced that the Company had commenced a review of its strategic alternatives in response to an unsolicited expression of interest from a third party.  Am. Compl., ¶ 49.

Throughout this process, J.P. Morgan contacted numerous financial sponsors and potential strategic acquirers to see whether they would be interested in acquiring the Company. Ex. A at 32-35.  The Board ultimately negotiated a merger agreement that would provide the Company's stockholders $61.10 per share, and announced the proposed merger agreement on October 21, 2015.  Am. Compl., ¶ 50.  The merger price represented an unaffected premium of 43.5% over the closing price of Company's shares on October 8, 2015 (one day prior to the Company's announcement that it was exploring strategic alternatives), and a premium of 19.7% over the closing price of Company's Common Stock on October 20, 2015 (the last trading day before the announcement of the merger agreement).  Ex. A at 39.

On November 17, 2015, the Company filed its preliminary proxy statement and on December 15, 2015, filed the definitive Proxy Statement.   Am. Compl., ¶ 73.   On January 8, 2016, SolarWinds' shareholders voted overwhelmingly in favor of the merger.   *Id.*

## III.   THE AMENDED COMPLAINT SHOULD BE DISMISSED

Although the Court must take the factual allegations as true on a Rule 12(b)(6) motion to dismiss and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff, mere legal conclusions and unwarranted deductions are not accepted as truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).   To survive a motion to dismiss, a complaint must allege sufficient facts to "state a claim to relief that is plausible on its face."   *Ashcroft,* 556 U.S. at 679 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).   A claim has facial plausibility when the plaintiff pleads facts allowing the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.   *Id.*   The plausibility standard requires more than a sheer possibility a defendant has acted unlawfully.   *Id.*   Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility."   *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Twombly,* 550 U.S. at 555 (internal citations and quotations omitted).   Here, as outlined further below, all Counts in the Amended Complaint fail to meet these standards; and, therefore, the Amended Complaint should be dismissed in its entirety.

A.      **Plaintiff Fails to Allege a Viable Claim for Breach of Fiduciary Duty.**[2]

SolarWinds' certificate of incorporation[3] contains an exculpatory provision authorized by 8 Del. C. § 102(b)(7), which immunizes the Directors from liability for any monetary damages resulting from a breach of the duty of care.[4]  *See Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 239 (Del. 2009) ("exculpatory provision, pursuant to 8 Del. C. § 102(b)(7), protect[s] the directors from personal liability for breaches of the duty of care").  The exculpatory provision bars claims alleging the Directors failed to exercise due care or were negligent.  *In re Lukens Inc. Sec. Litig.*, 757 A.2d 720, 733 (Del. Ch. 1999).  Thus, to survive a motion to dismiss, Plaintiff "must state a nonexculpated claim, *i.e.*, a claim predicated on a breach of the directors' duty of loyalty or bad faith conduct."  *Dent v. Ramtron Int'l Corp.*, No. 7950-VCP, 2014 WL 2931180, at *5 (Del. Ch. Jun. 30, 2014); *accord McMillan*, 768 A.2d at 501; *Lukens*, 757 A.2d at 734.

1.      **Plaintiff Fails to Allege a Breach of the Duty of Loyalty.**

To state a claim for breach of the duty of loyalty, Plaintiff must allege facts showing a majority of the Directors "was ***not*** both disinterested and independent."  *Dent*, 2014 WL 2931180, at *6 (emphasis added).  "A director is considered interested where he or she will receive a personal financial benefit from a transaction ***that is not equally shared by the***

---

[2] Under the internal affairs doctrine, a claim for breach of fiduciary duty by a shareholder against a board member is governed by the laws of the state of incorporation, which here is Delaware.  *See Hollis v. Hill*, 232 F.3d 460, 465 (5th Cir. 2000) (concluding, in shareholder dispute involving Nevada corporation, internal affairs doctrine required Nevada corporate law "determine[] the existence and scope of duties"); *Pilepro, LLC v. Chang*, --- F. Supp. 3d ---, 2016 WL 270874, at *10 (W.D. Tex. Jan. 20, 2016) (noting Nevada law determined whether corporate officer owed fiduciary duty to Nevada corporation and whether he breached that duty).

[3] True and correct copies of the Certificates of Incorporation for SolarWinds are attached to this Motion to Dismiss as **Exhibit B** and **Exhibit C**, and may be considered by the Court for purposes of this Motion. *In re Think3, Inc.*, 529 B.R. 147, 171 (Bankr. W.D. Tex. 2015) (holding that, on motion to dismiss, court may take judicial notice of and consider certificate of incorporation filed with Delaware Secretary of State).

[4] Where, as here, a merger has closed, "the plaintiffs are left with a suit for money damages."  *McMillan v. Intercargo Corp.*, 768 A.2d 492, 500 (Del. Ch. 2000).

**stockholders**.''   *Id.* (quoting *Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993)) (emphasis added).   A director lacks independence when the director's decision is not ''based on the corporate merits of the subject before the board,'' but on ''extraneous considerations or influences.''  *Id.*  This lack of independence is frequently shown when an interested individual ''controls'' the director.   *See id.*   Significantly, ''the disqualifying self-interest or lack of independence must be material, *i.e.*, 'reasonably likely to affect the decision-making process of a reasonable person.''   *Id.* (quoting *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 363 (Del. 1993)).

Plaintiff attempts to allege the Directors suffered from disabling conflicts in Paragraphs 52 through 57 of the Amended Complaint, but fails to sufficiently allege that a majority of the Directors was interested or lacked independence.

First, Plaintiff alleges that the ''Board and Company management collectively own a large illiquid block'' of SolarWinds shares and seek ''liquidity for their illiquid holdings'' (Am. Compl., ¶ 53),[5] but the mere fact board members hold a large interest in a company's stock does not create a disabling conflict.   *In re Transkaryotic Therapies, Inc.*, 954 A.2d 346, 366 (Del. Ch. 2008)  ''On the contrary, in fact, a director who is also a shareholder of his corporation is more likely to have interests that are aligned with the other shareholders of that corporation as it is in his best interest, as a shareholder, to negotiate a transaction that will result in the largest return for all shareholders.''   *Id.* (quoting *Orman v. Cullman*, 794 A.2d 5, 26 n. 56 (Del. Ch. 2002)) (internal quotations omitted).

---

[5] Plaintiff does not allege any facts explaining or supporting his conclusion that the stock held by the Directors or management is ''illiquid.''   For example, no facts are alleged showing the shares are not registered under § 5 of the Securities Act of 1933, not tradeable under any exception to that registration requirement, or subject to lock up agreements.   Without such facts, Plaintiff's assertion the stock is ''illiquid'' is a legal conclusion that cannot be considered on a motion to dismiss.   *See Tuchman*, 14 F.3d at 1067.

Second, Plaintiff alleges the merger gave the Directors and officers of SolarWinds a benefit unavailable to others shareholders in the form of the full vesting of stock options, performance units, and restricted shares (Am. Compl., ¶ 54); however, "[t]he accelerated vesting of options does not create a conflict of interest because the interests of the shareholders and directors are aligned in obtaining the highest price." *Globis Partners, L.P. v. Plumtree Software, Inc.*, No. 1577-VCP, 2007 WL 4292024, at *8 (Del. Ch. Nov. 30, 2007). The acceleration of stock options is such "a routine aspect of merger agreements," *In re OPENLANE, Inc. S'holder Litig.*, No. 6849-VCN, 2011 WL 4599662, at *5 (Del. Ch. Sept. 30, 2011), that the Delaware Chancery Court has held the "contention that the vesting of stock options in a change of control transaction implicates the duty of loyalty is frivolous." *In re BioClinica, Inc. S'holder Litig.*, No. 8272-VCG, 2013 WL 5631233, at *5 (Del. Ch. Oct. 16, 2013).

Finally, Plaintiff alleges senior management received change-of-control payments or stayed on after the merger (Am. Compl., ¶¶ 54-56), and the financial advisor was conflicted because a portion of its fees were contingent (*Id*. at ¶ 57),[6] but these allegations are irrelevant because a proper inquiry focuses on whether a majority of the *board of directors* suffered from a disabling conflict, not the management or a financial advisor. Moreover, Plaintiff alleges no facts showing that any member of management or the financial advisor dominated or controlled a majority of the Directors. *See Dent*, 2014 WL 2931180, at *6.

Plaintiff, thus, has failed to allege a breach of the duty of loyalty against the Directors.

---

[6] That "a substantial portion" of a financial advisor's fees "is contingent upon consummation of the Merger" does not show a breach of fiduciary duty. *See In re Alloy, Inc.*, No. 5626-VCP, 2011 WL 4863716, at *11 (Del. Ch. Oct. 13, 2011). "Contingent fees are undoubtedly routine." *Id.*

## 2.     Plaintiff Fails to Allege the Directors Acted in Bad Faith.

Because Plaintiff failed to allege a breach of the duty of loyalty, Plaintiff must, but has failed to, allege facts showing that the Directors acted in bad faith in approving the merger.  *See Lyondell*, 970 A.2d at 239-40.  Courts only find that conduct rises to the level of bad faith in an "extreme set of facts."  *Id*. at 243.  "Breaches of the duty of good faith include situations where the fiduciary intentionally breaks the law, where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, or where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating conscious disregard for his duties."  *BioClinica, Inc.*, 2013 WL 5631233, at *5 (internal quotations omitted).  A bad faith "claim cannot rest on facts that simply support the notion that the directors made an unreasonable or even grossly unreasonable judgment."  *In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 652 (Del. Ch. 2008).  Plaintiff's allegations here fall far short of showing bad faith, as they only involve matters that Delaware courts have held to be routine in merger transactions or that otherwise do not amount to a breach of fiduciary duty.

Plaintiff alleges "defendants agreed to certain onerous and preclusive deal protection devices," and attacks the "no solicitation" provision, matching rights, and 3.5% termination fee in the merger agreement.[7]  Am. Compl., ¶¶ 24 & 66-71.  However, these provisions comply with Delaware law.  *See Dent*, 2014 WL 2931180, at **8-9 (finding that no-solicitation provision does not support "a reasonable inference that the Individual Defendants consciously disregarded their fiduciary duties" and 4.5% termination fee "does not approach a level that would suggest the Company's board consciously disregarded their duties"); *In re Smurfit-Stone Container*

---

[7]  The Amended Complaint does not allege the termination fee as a percentage of the value of the transaction, which is how it is examined by Delaware courts.  The percentage is set forth in the Proxy Statement.  Ex. A at 42.

*Corp. S'holder Litig.*, No. 6164-VCP, 2011 WL 2028076, at \*21 n.141 (Del. Ch. May 20, 2011) (noting that "no shop and matching rights clauses . . . are customary in public company mergers today"); *McMillan*, 768 A.2d at 505 (holding 3.5% termination fee is not preclusive).

Without alleging what a "fair price" would be, Plaintiff further contends the price received in the merger was "unfair." Am. Compl., ¶¶ 58-65. This is facially implausible. The price received by SolarWinds' shareholders represented "an unaffected premium of 43.5% over the closing price of the Company's shares . . . one day prior to the Company's announcement that it was exploring strategic alternatives" and "a premium of 19.7% over the closing price . . . the last trading day before the announcement of the Merger Agreement." Ex. A at 39. The premium paid exceeds premiums that have been found to be not "so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any grounds other than bad faith." *Alloy*, 2011 WL 4863716, at \*12.

Plaintiff also alleges the Directors breached their fiduciary duties because of certain purported omissions from the Proxy Statement (Am. Compl., ¶¶ 73-79), but where, as here, a merger has closed, Delaware courts hold that such disclosure claims fail as a matter of law. *See Alloy*, 2011 WL 4863716, at \*\*13-14; *Transkaryotic Therapies, Inc.*, 954 A.2d at 360-63.

Even if disclosure claims could survive a closing, omissions are actionable only if they are material. Materiality of omitted information under Delaware law (and in accord with federal law) requires a showing that "there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *Dent*, 2014 WL 2931180, at \*10 (quoting *Rosenblatt v. Getty Oil Co.*, 493 A.2d 929, 944 (Del. 1985)). Thus, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by a reasonable investor as having significantly altered the total mix of information made available." *Id.*

(internal quotations omitted).  Plaintiff has not alleged any purported omissions were material and, in some cases, apparently failed to see that the "omitted" facts actually were included in the Proxy Statement.

First, while Plaintiff admits the Proxy Statement discloses J.P. Morgan's work for the acquirers over the two-year period preceding the merger, Plaintiff nevertheless claims the Proxy Statement is misleading because it fails to identify the specific services provided by J.P. Morgan to the acquirers' portfolio companies.  Am. Compl., ¶ 74.  Plaintiff argues that such information is material "because shareholders are entitled to be informed of all factors that may potentially incentivize the Board's financial advisors to subjectively manipulate their valuation of the Company."  *Id.*  However, shareholders are only entitled to facts that "significantly alter the total mix of information."   *Dent*, 2014 WL 2931180, at *11.  Plaintiff does not explain why a reasonable shareholder would find such minutiae important in deciding how to vote or how it would alter the total mix of information.

Second, Plaintiff alleges the Proxy Statement fails to distinguish between certain management projections and the projections used by J.P. Morgan in its analysis, and argues "stockholders are entitled to be informed of management's best estimates."  Am. Compl., ¶ 75.  This argument also fails to reflect actual materiality as a matter of law.  "There is no *per se* duty under Delaware law to disclose to stockholders financial projections given to and relied upon by a financial advisor."   *Dent*, 2014 WL 2931180, at *11.  Absent allegations showing how "undisclosed projections are in any way inconsistent with, or otherwise significantly different from the information that was disclosed," materiality is not shown.  *Id.* at *12.  Here, Plaintiff alleges no such facts showing such inconsistency.

Third, Plaintiff alleges the Directors changed their projections to make the fairness opinion align with the transaction price.  Am. Compl., ¶¶ 63-64.  The Proxy Statement plainly contradicts this allegation as it makes clear that the projections shared with the bidders **and** with J.P. Morgan were the same projections approved by the Directors when they reaffirmed the standalone plan.  Ex. A at 50.  Plaintiff's allegation is inflammatory, and the Court should not indulge this mischaracterization of the Proxy Statement.

Fourth, Plaintiff alleges the Proxy Statement does not state how stock-based compensation was treated as an input in J.P. Morgan's analysis, which is simply incorrect as the Proxy Statement included information about stock-based compensation.  *Id.* at 52.  Even if such information were not included, it would be immaterial absent an allegation J.P. Morgan used this input in an inconsistent, atypical, or unexpected manner.  *Dent*, 2014 WL 2931180, at *12.

Finally, Plaintiff includes a laundry list of financial projections provided to J.P. Morgan and extrapolations made by J.P. Morgan that Plaintiff contends were not disclosed.  Am. Compl., ¶ 77.  However, where, as here, the Proxy Statement discloses management's forecasts of revenue, operating income, EBITDA and free cash flow, investment banker-derived numbers are immaterial.  *In re Plains Exploration & Prod. Co. S'holder Litig.*, No. 8090-VCN, 2013 WL 1909124, at * 8 (Del. Ch. May 9, 2013) (quoting *In re Pure Res., Inc. S'holder Litig.*, 808 A.2d 421, 449 (Del. Ch. 2002)).

Accordingly, for the reasons set forth above, Plaintiff has failed to allege a valid claim of bad faith or lack of good faith.

### 3.    Plaintiff Alleges No Facts to Overcome the Business Judgment Rule.

Because a majority of shareholders approved the transaction and Plaintiff does not adequately allege that a majority of the Directors were not independent or had a disqualifying

conflict, Plaintiff's breach of fiduciary claims also fails in light of the application of Delaware's business judgment rule.  *See In re KKR Fin. Holdings LLC S'holder Litig.*, 101 A.3d 980, 1001 (Del. Ch. 2014) ("[T]he legal effect of a fully-informed stockholder vote of a transaction with a non-controlling stockholder is that the business judgment rule applies and insulates the transaction from all attacks other than on the grounds of waste . . . "); *In re Wheelabrator Techs., Inc. S'holder Litig.*, 663 A.2d 1194, 1202 (Del. Ch. 1995) (holding that, where transaction is approved after an untainted vote, the applicable standard of review is business judgment); *see also In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 68 n.5 (Del. 1995) ("In most circumstances, where a majority of fully informed stockholders ratify action of even interested directors, an attack on the ratified transaction normally must fail."); *Marciano v. Nakash*, 535 A.2d 400, 405 n.3 (Del. 1987) (noting that approval by fully informed and disinterested stockholders "permits invocation of the business judgment rule and limits judicial review to issues of gift or waste with the burden of proof upon the party attacking the transaction").

Notably, Plaintiff never alleges that the business judgment rule does not apply, nor can he.  As the Proxy Statement demonstrates, the stockholders were fully informed, receiving, *inter alia*, the following disclosures:  background information about the transaction (Ex. A at 30-38); the Directors' rationale for recommending that the stockholders approve the transaction (*id.* at 39-44); a thorough discussion of J.P. Morgan's fairness opinion (*id.* at 44-49); a complete summary of management's financial projections (*id.* at 52-55); and full disclosures concerning the Directors' interests (*id.* at 55-61).  Moreover, as explained in detail above, Plaintiff has not pled facts that could support a claim the Directors were anything other than disinterested and independent.  Accordingly, the Amended Complaint contains no material factual allegations that,

taken as true, would undermine this Court's deferential review under the business judgment standard.

Plaintiff also failed to plead any allegations that the Directors were wasteful in their actions.  However, even if he had so pled, the Delaware Supreme Court noted recently that courts are unlikely to find a breach of fiduciary duty for waste when there is an approving stockholder vote.  *Singh v. Attenborough*, No. 645, 2015, 2016 WL 2765312, at *1 (Del. May 6, 2016) ("When the business judgment rule standard of review is invoked because of a vote, dismissal is typically the result.  That is because the vestigial waste exception has long had little real-world relevance, because it has been understood that stockholders would be unlikely to approve a transaction that is wasteful.").

For the reasons set forth above, Plaintiff has failed to allege the facts necessary to overcome the protections afforded the Directors under SolarWinds' certificate of incorporation's exculpatory provision and under Delaware's business judgment rule.  Consequently, Plaintiff has not stated a claim for breach of fiduciary duty upon which relief can be granted, and Count I should therefore be dismissed.

### B.    Plaintiff Fails to Allege Aiding and Abetting Breach of Fiduciary Duty.

Count II attempts to allege aiding and abetting breach of fiduciary duty against SolarWinds and others, but the claim against SolarWinds fails as a matter of law, because "[a] corporation cannot aid and abet violations by the fiduciaries who serve it."  *In re Orchard Enters., Inc. S'holder Litig.*, 88 A.3d 1, 54 (Del. Ch. 2014) (citing *Arnold v. Soc'y for Sav. Bancorp, Inc. (Arnold IV)*, 678 A.2d 533, 539 (Del. 1996)).  Further, even if the aiding and abetting claim were not invalid as a matter of law, "[t]o establish a claim for aiding and abetting a breach of fiduciary duty, plaintiffs must demonstrate (1) the existence of a fiduciary

relationship; (2) a breach of a fiduciary duty; (3) knowing participation in the breach by a defendant who is not a fiduciary; and (4) damages proximately caused by the breach." *Transkaryotic Therapies, Inc.*, 954 A.2d at 370. "Knowing participation requires that a third party act with the knowledge that the conduct advocated or assisted constitutes a breach of the board's fiduciary duty." *Id.* at 371-72.

Plaintiff alleges no facts showing that SolarWinds "knowingly" participated in any conduct, much less conduct amounting to a breach of fiduciary duty. *See Twombly,* 550 U.S. at 555 (noting that "labels and conclusions, and a formulaic recitation of the elements of a cause of action" are insufficient). Therefore, Plaintiff fails to allege a valid claim for aiding and abetting breach of fiduciary duty against SolarWinds.[8]

### C.     Plaintiff Fails to Allege a § 14(a) Claim.

Count III attempts to state a claim for violation of § 14(a) by the Directors and SolarWinds. "To state a claim under section 14(a), plaintiffs must plead that the proxy statements contained a misstatement or omission of material fact, and that the alleged injury resulted from a transaction directly authorized by the proxy solicitation." *In re Browning-Ferris Indus., Inc. S'holder Derivative Litig.*, 830 F. Supp. 361, 365 (S.D. Tex. 1993), *aff'd sub nom. Cohen v. Ruckelshaus*, 20 F.3d 465 (5th Cir. 1994). Plaintiff has failed to allege materiality or the required state of mind of each defendant.

Disclosure claims under Delaware law apply the same standard for materiality used under federal law. *Masters v. Avanir Pharma., Inc.*, 996 F. Supp. 2d 872, 879-80 (C.D. Cal. 2014); *Rosenblatt v. Getty Oil Co.*, 493 A.2d 929, 944 (Del. 1985). Here, Plaintiff's § 14(a) and breach

---

[8] Even if Plaintiff could plead a valid claim for breach of fiduciary duty or aiding abetting breach of fiduciary, which Plaintiff cannot, he does not own those claims. Those claims are "owned" by the Company and can be asserted only by a shareholder derivatively. *Agostino v. Hicks*, 845 A.2d 1110, 1119 (Del. Ch. 2004); *Joe W. & Dorothy Dorsett Brown Found. v. Frazier Healthcare V, L.P.*, 889 F. Supp. 2d 893, 900 (W.D. Tex. 2012), *aff'd*, 538 Fed. Appx. 484 (5th Cir. 2013).

of fiduciary duty claims are based on the same alleged omissions.  As shown above, Plaintiff has failed to adequately allege that those omissions are material.  For this reason alone, Count III should be dismissed.

Claims alleging violations of the Exchange Act also must comply with the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA").  *E.g.*, *Hohenstein v. Behringer Harvard REIT I, Inc.*, No. 12-CV-3772, 2014 WL 1265949, at \*\*7-8 (N.D. Tex. Mar. 27, 2014); *Hulliung v. Bolen*, 548 F. Supp. 2d 336, 341 n.4 (N.D. Tex. 2008).  The PLSRA provides "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u–4(b)(2).  Thus, Plaintiff must allege particular facts sufficient to give rise to a strong inference that *each* defendant acted with the requisite state of mind.  Here, Plaintiff has failed to allege with particularity the state of mind of *any* defendant.  For this reason as well, Count III of the Amended Complaint should be dismissed.[9]

## IV.   CONCLUSION

For the reasons set forth above, the Directors and SolarWinds respectfully request that their motion to dismiss be granted.

Dated: June 8, 2016                     Respectfully submitted,

                                        */s/ Courtney Stewart*
                                        Courtney Stewart
                                        Texas Bar No. 24042039
                                        courtney.stewart@dlapiper.com

---

[9] Because Plaintiff has failed to allege a primary violation of § 14(a), Count IV for secondary liability should be dismissed as well.  *See, e.g., Hulliung v. Bolen*, 548 F. Supp. 2d 336, 342 (N.D. Tex. 2008) (dismissing "control person" claims after dismissing all § 14(a) fraud claims "because no predicate securities fraud violations remain in the case"); *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 383 (5th Cir. 2004) ("Control person liability is secondary only and cannot exist in the absence of a primary violation."); *In re Capstead Mortg. Corp. Sec. Litig.*, 258 F. Supp. 2d 533, 566 (N.D. Tex. 2003) ("Where a primary violation by the 'controlled person' . . . has not been adequately pleaded, the court should also dismiss a section 20(a) claim.").

Meghan Paulk Ingle
Texas Bar No. 24036821
meghan.paulkingle@dlapiper.com
**DLA PIPER LLP (US)**
401 Congress Avenue, Suite 2500
Austin, TX 78701-3799
Telephone: 512-457-7000
Facsimile: 512-457-7001

Robert W. Brownlie (*pro hac vice*)
California State Bar No. 138793
robert.brownlie@dlapiper.com
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Telephone: 619-699-27000
Facsimile: 619-699-2701

**ATTORNEYS FOR DEFENDANTS**
**SOLARWINDS, INC.,**
**KEVIN B. THOMPSON,**
**STEVEN M. CAKEBREAD,**
**PAUL J. CORMIER,**
**ELLEN F. SIMINOFF,**
**ROGER J. SIPPL, and**
**LLOYD G. WATERHOUSE**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(b)(1) on June 8, 2016.

*/s/ Courtney Stewart*
Courtney Stewart

WEST\269580521.2

- 16 -